[Cite as *State v. McComas*, 2013-Ohio-3180.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | : | Hon. Sheila G. Farmer, J. |
| | : | Hon. John W. Wise, J. |
| -vs- | : | |
| | : | |
| DANIEL MCCOMAS | : | Case No. 2013 AP 03 0013 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:        Appeal from the Court of Common
                                Pleas, Case No. 2012 CR 08 0217


JUDGMENT:                       Affirmed


DATE OF JUDGMENT:               July 17, 2013


APPEARANCES:

For Plaintiff-Appellee                  For Defendant-Appellant

AMANDA K. MILLER                        DAN GUINN
125 East High Avenue                    118 West High Avenue
New Philadelphia, OH  44663             New Philadelphia, OH  44663

*Farmer, J.*

{¶1}   On August 18, 2012, the Tuscarawas County Grand Jury indicted appellant, Daniel McComas, on one count of rape in violation of R.C. 2907.02.   Said charge arose from an incident involving a child under the age of thirteen.

{¶2}   A jury trial commenced on February 20, 2013.   On the morning of February 21, 2013, the state moved for a mistrial based on testimony of the investigating officer given the previous day regarding appellant's willingness to undergo a polygraph examination.  The trial court granted the motion.

{¶3}   A second trial commenced on February 25, 2013.   The jury found appellant guilty as charged.[1]  By judgment entry filed February 28, 2013, the trial court sentenced appellant to twenty-five years to life, and classified him as a Tier III sex offender.

{¶4}   Appellant filed an appeal and this matter is now before this court for consideration.  Assignments of error are as follows:

I

{¶5}   "THE TRIAL COURT ERRED IN GRANTING THE APPELLEE'S MOTION FOR A MISTRIAL DUE TO STATEMENTS REGARDING POLYGRAPH EXAMINATIONS."

II

{¶6}   "THE FINDING THAT THE APPELLANT WAS GUILTY OF RAPE PURSUANT TO ORC 2907.02(A)(1)(b) WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

---

[1]Due to the fact that there were two trials, the transcript for the first trial will be referred to as T. I and the transcript for the second trial will be referred to as T. II.

III

{¶7}   "THE TRIAL COURT ERRED IN DENYING THE APPELLANT'S MOTION IN LIMINE TO EXCLUDE NEW EVIDENCE THAT THE PROSECUTION REVEALED AFTER THE CONCLUSION OF THE FIRST TRIAL."

I

{¶8}   Appellant claims the trial court erred in granting the state's motion for mistrial.  We disagree.

{¶9}   The decision whether or not to grant a mistrial rests in a trial court's sound discretion.  *State v. Glover,* 35 Ohio St.3d 18 (1988).  In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment.  *Blakemore v. Blakemore,* 5 Ohio St.3d 217 (1983).

{¶10} Appellant argues the prosecutor failed to make the motion for mistrial immediately after an objection was sustained by the trial court during the first trial, and the prosecutor used the motion as a tool to get a second bite of the apple because the case "was not going well" for the state.  The testimony at issue was of the investigating officer, John Gray, on cross-examination by defense counsel (T. I at 204-205):

Q. Okay.  So he, he [appellant] came right over within the next hour?

A. Yep.

Q. He was cooperative?

A. Yep.

Q. And he said he didn't do it?

A. Yep.

Q. In fact he said hell no?

A. Right.

Q. He even offered to take a polygraph didn't he?

A. Yes he did.

Q. And you had talked to him about getting it set up?

A. Well I told him that I would see about it.

Q. Okay. Well did you see about it?

A. No sir.

Q. Why not?

A. I was waiting on the rest of the evidence to come back.

Q. Wouldn't a polygraph have been helpful?

MS. MILLER: Objection your honor. Polygraphs are inadmissible and so this is completely irrelevant.

MR. GUINN: I think it goes to the investigation and what was done. He said he could get a polygraph. My client said he would be fine doing it.

THE COURT: Well, but it is, it is inadmissible so I'm going to sustain the objection.


{¶11} Although the trial court gratuitously offered a statement on a polygraph's inadmissibility to the jury, no curative instruction was given at the time of the objection. The next morning, the prosecutor made a motion for a mistrial (T. I at 212):

Attorney Guinn asked that inappropriate question of the officer only to bolster the credibility of his client. There was no stipulation. There was no mention of a willingness or unwillingness to take a polygraph in any of the pretrial phases. The State cannot rebut this. I can't cross-examine Daniel on his willingness to take a polygraph because it's inadmissible. And I can't force Daniel to testify. This case here is even more dangerous than, to fundamental fairness than *State v. Miller.* In *Miller,* the Defendant had the recourse of, of appeal after a final verdict. In this case, if a mistrial is not granted, the only recourse that the State has is a possible interlockitory (sic) appeal should the Fifth District grant leave to accept that.

{¶12} In *State v. Miller,* 5th Dist. Tuscarawas No. 86AP060038, 1987 WL 9876 (April 20, 1987), *2, we found a question on taking a polygraph was inadmissible and a curative instruction would not have cured the problem:

The purpose of the question in the case *sub judice* was clearly directed at bolstering the credibility of the State's witness in the minds of the jurors. The question, though unanswered, was a leading question which suggested but one answer: that the witness was willing to take a polygraph examination as to the particular statement he testified he made to the Dover Police, and that therefore he was telling the truth. The effect

of the question is even more damaging when it is revealed on the cross-examination of McCullough that he had made prior statements to the police which were contradictory and inconsistent.

{¶13} As appellant readily concedes, the trial court is in the best and most authoritative position to access whether a mistrial is appropriate vis-à-vis a curative instruction. The testimony was clearly leading to the credibility of appellant by showing his willingness to take a polygraph and his immediate denial of the charge, without appellant taking the stand and testifying. The polygraph, to an unsophisticated jury, is an immediate imprimatur on appellant's credibility or innocence. Further, the testimony was totally orchestrated by defense counsel and was not introduced by the state.

{¶14} Upon review, we find no error in the trial court's ruling or any violation of the Double Jeopardy Clause.

{¶15} Assignment of Error I is denied.

II

{¶16} Appellant claims his conviction for rape was against the manifest weight of the evidence. We disagree.

{¶17} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin,* 20 Ohio App.3d 172, 175 (1st Dist.1983). See also, *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52. The

granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175.

{¶18} Appellant argues the difference in the victim's testimony between the first and second trials demonstrates that the victim was not credible, and the existence of his DNA on the victim's underwear was also not credible.

{¶19} Appellant was convicted of rape in violation of R.C. 2907.02(A)(1)(b) which states: "No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when***[t]he other person is less than thirteen years of age, whether or not the offender knows the age of the other person."

## CREDIBILITY OF THE VICTIM

{¶20} Appellant challenges the credibility of the victim, C.C., who was eleven years old at the time of the offense and thirteen years old at trial. Because of the mistrial, appellant already had C.C.'s testimony from the first trial. C.C. was steadfast that appellant initiated the masturbation incident in the living room and took her pants down and placed his penis in her "butt cheeks." T. I at 120-124; T. II at 164-166. He then made her go to his bedroom, where her pants were pulled down. T. I at 124-126; T. II at 168-170. She laid on the bed and appellant got on top of her and penetrated her with his penis, wherein he ejaculated. T. I at 127-128; T. II at 170-171, 198. An inconsistency in the two testimonies was when C.C. claimed in the first trial she felt she was in danger, like he was going to hurt her, and it hurt when he grabbed her wrist (T. I at 121-122, 151-152), but in the second trial, denied that appellant hurt her and claimed she was not in danger. T. II at 163-164, 179, 196-197. On redirect during the second

trial, C.C. explained when she originally stated she felt like she was in danger, she meant she was afraid that she could become pregnant. T. II at 220. On recross-examination, C.C. admitted she did not tell everything at the first trial because she was too scared, but denied making anything up. T. II at 224-225. Despite any claimed inconsistencies, the elements of appellant's conduct remained the same.

{¶21} C.C. also claimed appellant's sister, S.M., observed the rape in appellant's bedroom as she was standing in the doorway watching, but S.M. denied seeing anything and claimed C.C. never accompanied appellant to his bedroom. T. II at 171, 201, 383.

{¶22} Appellant presented the testimony of his friends, Lionel Woods and Tia Simms, who claimed they were with him the entire time and C.C. was asleep in the living room. T. II at 350-353, 370-372.

{¶23} The issue of C.C.'s credibility was at the forefront of appellant's defense as exemplified in defense counsel's closing argument. T. II at 442-444.

{¶24} The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. Jamison,* 49 Ohio St.3d 182 (1990). The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger,* 77 Ohio St.3d 415, 418, 1997-Ohio-260.

{¶25} From the verdict, it is obvious that the jury rejected appellant's attack on C.C.'s credibility. This is substantiated by the presence of appellant's DNA on the underwear worn by C.C. and the presence of a single sperm cell in her vagina. T. II at 303, 330-332.

## DNA EVIDENCE ON THE UNDERWEAR

{¶26} Appellant also attacks C.C.'s claim that State's Exhibit B was her underwear that she was wearing at the time of the rape. S.M., appellant's sister, testified she gave C.C. a pair of underwear to wear which she had found on the bathroom sink. T. II at 386-387. Another juvenile, S.P., claimed the underwear was hers and she had engaged in sexual intercourse with appellant in the morning on the day of the incident with C.C. T. II at 408-409, 412. S.P. testified after having sexual relations with appellant, she put her underwear back on for about ten minutes before changing into a swimsuit and leaving her clothes and underwear at the house. T. II at 409-410. These claims were never disclosed to the police nor mentioned by either witness until appellant's trial. T. II at 395-397, 414-418.

{¶27} The acceptance or rejection of this exhibit lies with the trier of fact. The credibility of S.M. and S.P. are suspect given the passage of time and their own relationships with appellant.

{¶28} As with most, if not all, cases of rape, it is generally a "he said, she said" situation. Appellant told Officer Gray that C.C. offered him a "hand job" in exchange for a cigarette. T. II at 271. S.M. claimed she told C.C. she was going to tell her mom if she did not stop and C.C. said "she would tell her mom that Daniel did stuff to her if I told," thereby implying that C.C. made up the incident. T. II at 388.

{¶29} As noted above, the believability of anyone's testimony lies with the trier of fact, in this case, the jury. We find C.C.'s consistent statements of the events, coupled with the presence of a sperm cell in her vagina and appellant's DNA on her underwear,

regardless of ownership, was sufficient to substantiate the jury's guilty finding. Upon review, we find no manifest miscarriage of justice.

{¶30} Assignment of Error II is denied.

III

{¶31} Appellant claims the trial court erred in denying his motion in limine regarding photographs of State's Exhibit B, the underwear. We disagree.

{¶32} During the first trial, the state presented State's Exhibit B, the underwear in three pieces, but believed to be the entire garment. After the mistrial, the state informed appellant that it would be presenting two photographs of State's Exhibit B and C.C.'s sanitary pad from the Bureau of Criminal Investigation (hereinafter "B.C.I."). The photograph of the underwear depicted a missing piece from State's Exhibit B which contained blood. In the motion in limine, appellant argued his counsel was not given the photographs earlier, and were produced to substantiate C.C.'s claim in the first trial that she had been bleeding. As noted by the state in its response, all evidence listed on the B.C.I. lab report was available at the Newcomerstown Police Department upon request. Further, none of the B.C.I. experts had testified at the first trial and State's Exhibit B had not even been admitted into evidence.

{¶33} In its judgment entry filed February 26, 2013, the trial court denied the motion in limine "at this point." Defense counsel did not renew the motion at trial and did not object to the admission of the exhibits. T. II at 338-339.

{¶34} In *Akron v. Carter,* 190 Ohio App.3d 420, 2010-Ohio-5462, ¶ 7 (9th Dist.), our brethren from the Ninth District explained the following:

This court has described a motion in limine as "a precautionary request***to limit the examination of witnesses by opposing counsel in a specified area until its admissibility is determined by the court outside the presence of the jury." *State v. Echard,* 9th Dist. No. 24643, 2009-Ohio-6616, 2009 WL 4830001, at ¶ 3, quoting *State v. Grubb* (1986), 28 Ohio St.3d 199, 201, 28 OBR 285, 503 N.E.2d 142. Due to the preliminary nature of the ruling, in order to preserve the issue for appeal, one must object at the point during trial when the issue arises. Id. at ¶ 4. In *Echard*, this court pointed out that the Ohio Supreme Court has "explained that renewing a motion and/or objection in the context of when [the evidence] is offered at trial is important because 'the trial court is certainly at liberty***to consider the admissibility of the disputed evidence in its actual context.' " Id. at ¶ 4, quoting *Grubb* at 202.

{¶35} Appellant's claimed error was not perfected for the record and therefore is subject to review under the harmless error standard. Harmless error is described as "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." Crim.R. 52(A). Overcoming harmless error requires a showing of undue prejudice or a violation of a substantial right.

{¶36} We find the arguments herein fail under this standard. Photographs of the underwear were admissible under the rules of evidence and were relevant as to the physical examination done by B.C.I. We cannot say with any certainty that they would not have been presented at the first trial. C.C. testified she had a sanitary pad on the

day of the incident because she was on her menstrual cycle (T. I at 138), therefore the presence or absence of blood on the underwear was an issue at both trials. The B.C.I. reports given to defense counsel listed the items examined. We cannot find that they would have ever been inadmissible as they were relevant evidence at both trials.

{¶37} Assignment of Error III is denied.

{¶38} The judgment of the Court of Common Pleas of Tuscarawas County, Ohio is hereby affirmed.

By Farmer, J.

Hoffman, P.J. and

Wise, J. concur.


_____


_____


_____

                           JUDGES


SGF/sg 702

[Cite as *State v. McComas*, 2013-Ohio-3180.]

IN THE COURT OF APPEALS FOR TUSCARAWAS COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| DANIEL MCCOMAS | : | |
| | : | |
| Defendant-Appellant | : | CASE NO. 2013 AP 03 0013 |

For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Tuscarawas County, Ohio is affirmed. Costs to appellant.

_____

_____

_____

JUDGES